UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KATHRYN A.,                               :
                                         :
      *Plaintiff*,                        :
                                         :
            v.                            :        No. 3:22-cv-1392 (SDV)
                                         :
COMMISSIONER OF SOCIAL                    :
SECURITY,                                 :
                                         :
      *Defendant*.                        :

## RULING ON PENDING MOTIONS

Plaintiff brings this administrative appeal from the decision of the Commissioner of the

Social Security Administration denying her applications for disability insurance benefits. For the

reasons below, plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 14, is

DENIED, and the Commissioner's Motion to Affirm, ECF 16, is GRANTED.

### A. LEGAL STANDARDS

#### 1. Disability and eligibility

A claimant is disabled under the Social Security Act if he or she is "unable to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death, or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be

eligible for Title II disability insurance benefits, the claimant must establish the onset of

disability during the period in which he or she was insured for disability benefits based on

quarters of qualifying work.  42 U.S.C. § 423; *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

### 2.  Commissioner's five-step review

The Commissioner of Social Security is authorized to make findings of fact and decisions on disability applications, *see* 42 U.S.C. §§ 405(b)(1), in accordance with the five-step sequential evaluation process provided in 20 C.F.R. § 404.1520.  (1) First, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity.  (2) If not, the Commissioner determines whether the claimant has a medically determinable impairment or combination of impairments that are "severe," meaning that it "significantly limits" the claimant's physical or mental ability to do basic work activities.  (3) If the claimant has a severe impairment or combination of impairments, the Commissioner evaluates whether, based solely on the medical evidence, the claimant has an impairment that "meets or equals" an impairment listed in Appendix 1, Subpart P, No. 4 of the regulations (the "Listings") and that either is expected to result in death or has lasted or will last for at least 12 months. [1]  If so, the claimant is disabled.  (4) If not, the Commissioner determines whether, despite the severe impairment, the claimant has the residual functional capacity to perform his or her past work. [2]  (5) If not, the Commissioner determines whether there is other work in the national economy which the claimant can perform in light of his or her residual functional capacity, age, education, and work experience.  *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden of proof on the final step.  *McIntyre v. Colvin*, 758

---

[1] *See* 20 C.F.R. § 404.1509 (durational requirement).

[2] Residual functional capacity is the most a claimant can do in a work setting despite his or her limitations.  20 C.F.R. § 404.1545.

F.3d 146, 150 (2d Cir. 2014).  The Commissioner's authority to make these findings and

decisions is delegated to an administrative law judge ("ALJ").  *See* 20 C.F.R. § 404.929.  A

claimant may request review of an ALJ's decision by the Appeals Council.  *See* 20 C.F.R. §

404.967.  If the Appeals Council declines review or affirms the ALJ's decision, the claimant may

appeal to the United States District Court.  42 U.S.C § 405(g).

### 3.  Court's review on appeal

A district court reviewing the Commissioner's final decision is performing an appellate

function, *see Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981), and has the power to

affirm, modify, or reverse the Commissioner's decision based on its review of the briefs and the

administrative record.  *See* 42 U.S.C § 405(g).  "A district court may set aside the

Commissioner's determination that a claimant is not disabled only if the factual findings are not

supported by substantial evidence or if the decision is based on legal error."  *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

## B.  BACKGROUND

### 1.  Procedural History

In September 2020, plaintiff filed an application for disability insurance benefits alleging

a disability onset date of April 19, 2020.  R. 67-68.  The claim was denied at the initial and

reconsideration levels, and plaintiff requested a hearing.  R. 84-85, 101-102.  On November 9,

2021, ALJ John J. Molleur conducted a hearing at which both the plaintiff and a vocational

expert testified.  R. 35-66.  On November 22, 2021, the ALJ issued a written decision denying

plaintiff's claim.  R. 15-29.  Plaintiff's request for review was denied by the Appeals Council, R.

1, and plaintiff filed this action on November 3, 2022.

## 2. Factual History

Plaintiff's claims of error in her Motion to Reverse relate exclusively to her mental health, and she does not challenge the ALJ's conclusions regarding her physical impairments. *See* Pl. Br., ECF 14-1.  Accordingly, this opinion focuses solely on the ALJ's analysis of the mental impairments.  In her initial application, plaintiff listed her mental impairments as bipolar, PTSD, agoraphobia, depression, postpartum depression, and anxiety. [3]  R. 188.

### a. Summary of mental health treatment

The medical records indicate that plaintiff had a history of anxiety and depression prior to giving birth in May 2020, that she previously had been prescribed Xanax for as-needed use, and that her mental health struggles substantially increased postpartum.  R. 323, 346.  During prenatal treatment in September 2019, plaintiff reported "mild anxiety" and was referred for behavioral health rather than Xanax during pregnancy.  R. 364, 368.

During postpartum treatment in May 2020, Dr. Karianne Silverman, OB-GYN noted that plaintiff was on Zoloft.  R. 393.  In August 2020, in addition to depressive symptoms, plaintiff reported experiencing panic attacks for the first time.  R. 700.  Dr. Silverman added postpartum depression to plaintiff's active problem list and referred her for psychotherapy.  R. 700, 705.

In September 2020, plaintiff established treatment with a new primary care provider, Carrie Doherty, PA-C.  R. 512.  Plaintiff reported that she had been unable to go into gas stations or stores for several years but not treated with anything other than Xanax until recently.  *Id.*  PA

---

[3] As for physical impairments, plaintiff listed pubic symphesis diastasis, hypothyroid, and back pain/injury.  R. 188.  In her request for reconsideration, plaintiff reported a new diagnosis of neurocardiogenic syndrome.  R. 90

Doherty observed that plaintiff was "[p]ositive for agitation and dysphoric mood," and added Cymbalta and Ativan to plaintiff's medication regimen while tapering Zoloft.  R. 514, 516.

Plaintiff began attending therapy with Jessica Clancy, LCSW in October 2020.  R. 534. Clancy noted that plaintiff was suffering chronic postpartum pain and limited movement due to a pelvic separation that was complicating her mental health situation.  *Id.*  Plaintiff had twelve psychotherapy visits with Clancy between October 2020 and September 2021.  R. 534-42, 555-57, 565-67, 805-07, 815-20, 834-39, 906-08, 915-22.  In parallel with the psychotherapy, plaintiff obtained psychiatric evaluation and medication treatment from Gweneth Douglas, APRN between October 2020 and September 2021.  R. 543-54, 558-64, 808-14, 821-33, 840-46, 899-905, 909-14, 923-29.  Douglas initially assessed plaintiff's conditions as postpartum depression and anxiety and added Wellbutrin to her medication regimen.  R. 553.  Between November 2020 and September 2021, APRN Douglas added bipolar II to plaintiff's list of conditions (*see* 2/18/21 note at R. 826) and adjusted the medication balances, including trying Lexapro, Symbyax, Zyprexa, Prozac, and Xanax.  R. 756, 813, 826, 832, 845, 904, 909, 913, 928.  As discussed in more depth below, plaintiff's mental health steadily improved over the course of her treatment with Clancy and Douglas.

Notably, the medical record – which spans from prenatal treatment through September 2021, two months before the November 2021 hearing date – does not include a diagnosis of either PTSD or agoraphobia.  There is no mention of those conditions in the Physical Residual Function Capacity Questionnaire completed by PA Doherty or the mental Medical Source Assessment completed by LCSW Clancy.  R. 853-56, 859-62.

**b.  Subjective reports regarding mental impairments**

In a December 2020 function report in support of her application, plaintiff wrote the following.  "I have near fainting spells daily from panic attacks.  I am afraid to be in public or leave the house due to anxiety.  My moods change frequently due to my mental health disorder and I am unable to care for myself at times.  I am afraid to be alone so my family always has someone with me."  R. 197.  She added that "anxiety causes me to be forgetful" and that she has "severe mood changes and it has caused me to no longer have friends."  R. 201-02.

Plaintiff testified at the November 2021 hearing as follows.  She was most recently employed as a 911 dispatcher for 15 years.  R. 43.  She also has prior experience as an EMT and also worked for a publisher doing customer service and archiving.  R. 45-47.  Due to her years in emergency services, she developed agoraphobia and PTSD and started showing signs of bipolar disorder, but upon the birth of her child in May 2020 "everything kind of hit me with the postpartum depression and it got much worse."  R. 47.  Before leaving employment she felt anxious and forgetful at times.  R. 48.  She has nightmares.  R. 49.  She has tried various combinations of mental health medications.  *Id.*  A combination of Cymbalta and Wellbutrin helped the best but she had to discontinue to a physical reaction.  *Id.*  Due to agoraphobia, she does not visit grocery stores or gas stations or "places like that."  R. 53.  The mental health issues caused her to gain weight, though she lost weight while pregnant.  R. 58.

**3.  The ALJ's Decision**

In the November 22, 2021 decision, the ALJ followed the five-step sequential evaluation to determine whether plaintiff was disabled under the Social Security Act.  At Step 1, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 19, 2020.  R. 17.  At Step 2, the ALJ found that the plaintiff had the following severe

6

impairments: symphysis pubis dysfunction, degenerative disc disease of the lumbar spine,

sacroiliac joint dysfunction, and obesity.  R. 18.  However, he found that plaintiff's alleged

postpartum depression, bipolar disorder, and PTSD were not severe impairments.  R. 18-19.  At

Step 3, the ALJ found that these impairments do not meet or medically equal a listed impairment.

R. 19.  The ALJ then determined that the plaintiff had the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant must
> avoid climbing ladders, ropes or scaffolds.  She cannot work at unprotected
> heights.

R. 21.  At Step 4, the ALJ found that the plaintiff was capable of performing past relevant work

as a 911 dispatcher or telecommunicator and therefore concluded that she was not disabled

within the meaning of the Social Security Act from the onset date of April 19, 2020 to the date of

decision.  R. 28-29.

## C.  DISCUSSION

On this appeal, plaintiff raises four claims of error.  *First*, plaintiff claims that the ALJ

committed procedural error by failing to adequately address the supportability and consistency of

the medical opinion provided by plaintiff's psychotherapist, Jessica Clancy, LCSW.  *Second*,

plaintiff claims that the ALJ's finding that Clancy's opinion was only partially persuasive is not

supported by substantial evidence.  *Third,* plaintiff claims that the ALJ erroneously found at Step

2 that plaintiff's alleged bipolar disorder, PTSD, and postpartum depression were not severe

impairments.  *Fourth*, plaintiff claims that the ALJ failed to adequately explain why he included

no non-exertional limitations in his residual functional capacity determination.  The Court

addresses each in turn.

    **1.   Analysis of medical opinion of Jessica Clancy, LCSW**

       **a.   Background**

As noted above, plaintiff had twelve psychotherapy visits with LCSW Clancy between October 2020 and September 2021.  R. 534-42, 555-57, 565-67, 805-07, 815-20, 834-39, 906-08, 915-22.  Halfway through that period, on March 16, 2021, Clancy filled out a mental Medical Source Assessment form in support of plaintiff's application for disability benefits.  R. 859-62. In the general categories of "sustained concentration and persistence," "social interaction," and "adaption," Clancy opined that that there were numerous specific functions that plaintiff would have noticeable difficulty performing for more than 10 percent through 20 percent of the workday.  R. 860-61.  That included such specific functions as carrying out detailed instructions; making simple work-related decisions; completing a normal workday and work week without interruptions from psychological based symptoms and performing at a constant pace without an unreasonable number and length of rest periods; maintaining socially appropriate behavior; and responding appropriately to changes in the work setting.  *Id.*  Clancy also opined that plaintiff would be unable to maintain regular attendance more than 20 percent of the work week, although she included the handwritten explanation that this limitation was "related to physical."  R. 860. As support, Clancy referred to "attached case notes" and added that plaintiff is

> easily distracted at times.  New environments unfamiliar cause panic.  She continues to work with psychiatric APRN [Douglas] to properly medicate her bipolar 2 [diagnosis].  Ongoing chronic pain has made her mental health significantly worse.  She cont[inues] to work w/ providers to address this.

R. 862.

**b.  Legal standard for evaluation of medical opinion**

The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s)." [4]  20 C.F.R. § 404.1513(a)(2).  When weighing the persuasiveness of medical opinions in the record, the ALJ must consider five factors: supportability, consistency, the medical source's relationship with the claimant, the length of the treatment relationship, the source's area of specialty, and any "other factors that tend to support or contradict a medical opinion."  *Id.* § 404.1520c(c).  Supportability and consistency are the two most important factors, and the ALJ's analysis of those factors must be explained in the decision.  *Id.* § 404.1520c(b)(2).

Supportability is an examination of the objective medical evidence and supporting explanations "presented" by a medical source.  *Id.* § 404.1520c(c)(1).  The more relevant the evidence and explanation cited by the source, the more persuasive the opinion.  *Id.*  In other words, supportability "has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support her opinion." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-cv-4630 (LJL)(BCM), 2020 WL 8167136, at *16 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

In contrast, consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."  *Vellone v. Saul*, No. 1:20-vv-261 (RAK)(HP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation*

---

[4] An LCSW such as Clancy is a "medical source" who can render a "medical opinion" under the regulations.  *See Sonia N.B.A. v. Kijakazi*, No. 3:21-cv-709-TOF, 2022 WL 2827640, at *7 (D. Conn. July 20, 2022); *see also* 20 C.F.R. § 404.1502(d) ("Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law[.]").

*adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).  "The more consistent a medical opinion . .
. is with the evidence from other medical sources and nonmedical sources in the claim, the more
persuasive the medical opinion . . . will be."  20 C.F.R. § 404.1520c(c)(2).

### c.  ALJ's discussion of supportability and consistency

The ALJ's decision includes a paragraph evaluating Clancy's opinion.  The ALJ noted
that Clancy opined a 10%-20% limitation of the claimant's ability to carry out detailed
instructions, maintain attention and concentration, work in coordination with others, make simple
work decisions, interact with the public, complete a normal work week, maintain socially
appropriate behavior, respond to changes in the workplace, and set realistic goals. R. 32-33.  He
further noted Clancy's opinion of a greater level of limitation in maintaining regular attendance
and traveling to unfamiliar places.  R. 33.  The ALJ noted Clancy's explanation that plaintiff is
"is easily distracted and experiences panic in new situations" but observed that "[t]he treatment
records provided do not indicate that the claimant is distractible during treatment sessions, nor
does the claimant complain of significant distractibility."  *Id.*  The ALJ also noted a lack of
evidence that plaintiff experienced panic during appointments, including in new settings.  *Id.*
The ALJ also stated that "[m]ental status examination findings consistently document normal
findings without evidence of the level of cognitive impairment indicated by the opinion of Ms.
Clancy" and that "the moderate to marked limitations opined lack objective support."  R. 33.  He
therefore found the opinion only partially persuasive.  *Id.*

Although the ALJ's analysis of supportability and consistency of Clancy's opinion was
not a model of completeness, this was at most harmless error because the ALJ addressed the
requisite issues elsewhere in his decision.  *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL
2189293, at *2 (2d Cir. June 17, 2022) (discussing harmless error in context of supportability

and consistency analysis).  Regarding supportability, Clancy cited distractibility, panic, bipolar,

and chronic pain.  The marked and moderate limitations that Clancy assessed largely pertained to

the first two, *see* R. 859-62, and the ALJ clearly explained that there were incongruities between

the limitations assessed by Clancy and the record evidence in these areas, R. 33.  *See, e.g.*,

*Rosario v. Comm'r of Soc. Sec.*, 2022 WL 819810, at *10 (S.D.N.Y. Mar. 18, 2022) (ALJ

adequately addressed supportability by "analyzing [the provider's] underlying treatment records

against her opinion, and finding an incongruity").  However, the ALJ did not directly address

Clancy's notations regarding bipolar disorder and the impact of chronic pain.  Regarding

consistency, apart from his discussion of distractibility and panic, the only other explanation the

ALJ provides is that mental status examinations at provider appointments do not demonstrate

cognitive impairment, R. 33, which is a non sequitur insofar as Clancy does not appear to be

opining that plaintiff has cognitive impairment, *see* R. 859-62.  In short, viewed in a vacuum, the

paragraph directly evaluating Clancy's opinion has gaps.

        However, this was harmless error at most because the ALJ explained his reasoning

regarding the mental health limitations elsewhere in the decision.  A procedural error in a

§ 1520c analysis of a medical opinion is harmless where " 'a searching review of the record'

assures [the Court] 'that the substance of the [regulation] was not traversed.'"  *See Loucks*, 2022

WL 2189293, at *2 (2d Cir. June 17, 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d

Cir. 2019)).  Regarding Clancy's reference to bipolar disorder, the ALJ previously concluded at

Step 2 that plaintiff's bipolar disorder was not a severe impairment, and he analyzed her mental

health record in detail, summarizing her mental health treatment including individual therapy and

medication management that resulted in documented improvement.  *See* R. 18, 24-25.  As for

Clancy's reference to chronic pain, the ALJ elsewhere discussed the impact of plaintiff's

physical limitations on her mental health, noting that plaintiff's "primary complaints [in behavioral health records] are related to difficulty coping with her physical limitations," R. 18, but that "the evidence of record suggests that treatment has resulted in effective control of the claimant's pain" and that there was a lack of objective support for the degree of physical limitation that she alleged, R. 21-23, 25.  Clancy's opinion also assessed social limitations, which the ALJ addressed earlier in the decision noting that "ongoing social anxiety" was "a baseline for [plaintiff] and has been present for many years" yet had not prevented her from maintaining skilled work activity, and furthermore had improved since the alleged onset date.  R. 18.  The ALJ further observed that "[t]hough the claimant continues to report some anxiety, it is primarily related to situational stressors, including a lack of finances due to her unemployment, suggesting that her symptoms are a reasonable reaction to stress."  R. 25.  In short, the mental limitations that Clancy opined in her medical source assessment concerned concentration, adaption to new situations, social anxiety, and chronic pain, and the ALJ's reasoning on all these issues is provided in his decision.  Consequently, the ALJ's failure to address those issues in direct reference to Clancy's opinion was harmless.

### 2.  Substantial evidence supports the ALJ's consistency finding

As for the ALJ's finding that Clancy's opinion was inconsistent with the entire record, there is substantial evidence to support that finding.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  It must be "more than a mere scintilla or touch of proof here and there in the record."  *Id.*  If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial

evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

Plaintiff's brief highlights several examples of mental health struggles in the record, including diagnoses of postpartum depression and bipolar, reports of ongoing social anxiety, and mental status examinations showing dysphoric and anxious mood and flat affect during mental health appointments. ECF 14-1 at 6-8. Plaintiff also notes that during the August and September 2021 recent visits with Clancy, which are the most recent in the record, she reported long-term social anxiety that she was feeling "intensely" now, and that she had continuing issues managing anxiety and social phobia on a daily basis. *Id.* at 6-7. Plaintiff argues that the ALJ "conveniently failed to consider any other abnormal psychiatric findings from other providers in assessing the consistency of the opinion of LCSW Clancy[.]" *Id.* at 8.

The psychiatric findings that plaintiff appears to be referencing are from APRN Douglas, who was managing plaintiff's psychiatric medication and whose treatment notes confirm that plaintiff improved over time. The most common assessment that Douglas performed on plaintiff was the PHQ-2 Questionnaire, which examines symptoms over the prior two weeks and assesses a patient's depression as minimal, mild, moderate, moderately severe, or severe. R. 543-44, 558-59, 808-10, 821-22, 841, 909, 923. In October 2020, Douglas assessed plaintiff's depression as "moderate" and noted plaintiff's report that depression made it "extremely difficult" to do her work, take care of things at home, or get along with other people. R. 544. Douglas also used a GAD-7 questionnaire to conclude that plaintiff had a probable anxiety disorder. R. 545-46. In November 2020, Douglas noted that plaintiff was having difficulty sleeping and concentrating, which led to a change in her medication. R. 558, 560. In January 2021, Douglas noted that plaintiff reported no improvement in depressive symptoms and that her depression made it very

difficult for her to do her work, take care of things at home, or get along with other people.  R. 808, 810.  Nonetheless, Douglas rated plaintiff's depression as "mild" at that time.  *Id.*  In February 2021, Douglas noted that plaintiff displayed a dysphoric mood but assessed plaintiff's depression as "mild."  R. 822-26.  She added a bipolar diagnosis and prescribed Symbyax, and also prescribed Xanax for anxiety.  R. 826.  Douglas's subsequent appointment notes from March, June, and September 2021 noted plaintiff's history of dysphoric mood, sleep disturbance, and feeling nervous/anxious but that these symptoms were managed with medications.  R. 842, 910, 925.  However, she noted in each appointment that plaintiff's mood was happy, R. 844, 912, 927, and plaintiff reported very few depression symptoms on the questionnaire and stated that depression only made her daily activities "not difficult at all" or "somewhat difficult," resulting in depression assessments of "none" or "minimal," R. 840-42, 909-10, 924-25. [5]  In September 2021, plaintiff did report sleeping less and feeling more anxious over the prior week and requested an increase in medications, and Douglas increased the bipolar medication.  R. 923, 929.

The low point in this history was in February 2021, which is evident in Clancy's contemporaneous treatment records as well.  For example, Clancy's note from the February 23, 2021 session stated: "In bed for session due to pain. . . . Pt feels discouraged about her medical condition.  The many unknowns increase her anxiety and depression as well.  She feels the financial stress more and more."  R. 834.  That was the last time Clancy saw plaintiff before drafting her written medical source assessment on March 9, 2021.  R. 859-62.  After that lowest point, plaintiff showed general improvement in sessions with Clancy and Douglas.  On March

---

[5] A depression severity score of 0-4 on the PHQ 9 questionnaire as reflected at R. 909-10 and 924-25 indicates a severity level of none or minimal.

16, 2021, Clancy wrote that plaintiff "feels a bit more stable with her bi-polar" and that she has

not had "full manic or depressive episodes."  R. 837.  Clancy also noted on this date that plaintiff

could not complete an outing to Costco due to her anxiety yet felt her medication adjustments

were helping.  *Id.*  On March 18, 2021, plaintiff reported improvement in her depressive

symptoms and the severity of her depression was characterized as "none-minimal."  R. 842.  In

June 2021, plaintiff reiterated that there had improvement in her depressive symptoms.  R. 909.

By August 2021, plaintiff reported to Clancy again that the medications were helping and that

she was able to go to the store if her husband accompanied her.  R. 915.  She believed her

medical issues were contributing to her emotional state.  *Id.*  Between March and September

2021, Clancy noted on multiple occasions that plaintiff easily engaged in conversation and had

stopped being tearful during therapy sessions.  R. 837, 906, 915, 919.  Plaintiff did report in

September 2021 that she felt the Xanax was not working and that there were many days in a row

that she does not leave the house.  R. 919.  Clancy "highlighted how many of the situations

around her are exacerbating her mental health like being down [on] income."  *Id.*  The very next

day, Douglas reported plaintiff continued to have some symptoms of anxiety but that the severity

of plaintiff's depression was minimal.  R. 923-29.

In summary, although there were ups and downs, plaintiff made steady improvement in

her mental health after the date of Clancy's March 2021 assessment.  There is substantial

evidence to support the ALJ's finding that after "several adjustments to her medication regimen"

and frequent therapy throughout late 2020 and 2021, plaintiff experience "some improvement of

her symptoms."  R. 24.  Substantial evidence also supports the ALJ's note that anxiety was a

baseline for plaintiff even while she was still working, and that her anxiety was "primarily

related to situational stressors, including a lack of finances due to her unemployment, suggesting

that her symptoms are a reasonable reaction to stress." R. 24-25. Notably, plaintiff does not dispute the ALJ's conclusions that her "primary complaints are related to difficulty coping with her physical limitations," R. 18, and that her physical impairments improved over time since the birth of her child, R. 23-24. In sum, although plaintiff points to evidence that she continued to have mental health struggles, there is substantial evidence to support the ALJ's finding that the moderate and marked limitations assessed in Clancy's March 2021 opinion are not consistent with the overall treatment record. Accordingly, there was no reversible error in the ALJ's evaluation of LCSW Clancy's March 2021 mental health assessment.

### 3. Step 2 finding that mental impairments were not severe

In general terms, at Step 2, the ALJ performs a screening function by analyzing whether a claimant has any medically determinable impairment or combination of impairments that is severe – if not, the analysis ends and the claim is denied. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (standard for a finding of severity at Step 2 "is *de minimis* and is intended only to screen out the very weakest cases"). A "severe" impairment is one that "significantly limits" a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see also* Soc. Sec. Rul. 85-28, 1985 WL 56856 (S.S.A. 1985) (claim may be denied at Step 2 only if combination of impairments does not have "more than a minimal effect" on ability to perform basic work activities). If there is a severe impairment, the ALJ proceeds to Step 3 and evaluates whether the impairment(s) meets the definition of a listed impairment and the durational requirement. *Id.* § 404.1520(a)(4)(ii) and (d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereinafter, the "Listings").

Where the claimant alleges mental impairments, the ALJ analyzes their severity at Steps 2 and 3 under the "special technique" described in 20 C.F.R. § 404.1520a. *See Petrie v. Astrue*,

412 F. App'x 401, 408 (2d Cir. 2011); *Monica L. v. Comm'r of Soc. Sec.*, No. 1:19-cv-1435 (CJS), 2021 WL 630909, at *3 (W.D.N.Y. Feb. 18, 2021).  The criteria for this evaluation – usually referred to as the "paragraph A" and "paragraph B" criteria – are provided in section 12.00 of the Listings.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.  First, the ALJ evaluates whether the claimant has a medically determinable mental impairment using the paragraph A criteria.  *See* 20 C.F.R. § 404.1520a(b)(1).  If so, the ALJ assesses the claimant's degree of functional limitation in the "four broad functional areas" described in paragraph B: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  *See id.* § 404.1520a(c).  The ALJ must rate the degree of limitation in each functional area on a five-point scale: None, mild, moderate, marked, and extreme.  *Id.* § 404.1520a(c)(4).  A rating of "none" or "mild" usually results in a finding that an impairment(s) is not severe.  *Id.* § 404.1520a(d)(1).

In this case, the ALJ found at Step 2 that, in addition to certain physical impairments, plaintiff had medically determinable mental impairments of postpartum depression, bipolar disorder and posttraumatic stress disorder.  R. 18.  He then evaluated her functional limitations in the four paragraph B areas, found that the degree of limitation in each area was "mild" in light of the entire record.  R. 18-19.  In particular, the ALJ noted that her mental health had improved with psychotherapy and medication treatment and that her primary complaints of functional limitations related to her physical impairments, rather than mental.  *Id.*  The ALJ therefore concluded that plaintiff's mental impairments were not severe.  *Id.*

Plaintiff argues that "the record shows Plaintiff's mental impairments have a profound impact on her ability to function, and the ALJ's finding to the contrary is unsupported by any evidence or logical explanation."  Pl. Br., ECF 14-1 at 13.  To the extent that plaintiff is alleging

procedural error, the claim is unfounded.  The ALJ applied the special technique required by §

404.1520a, including the paragraph B criteria, and explained his reasoning.  *See* R. 18-19.

To the extent that plaintiff is claiming factual error, the Court concludes that the ALJ's

Step 2 finding was supported by substantial evidence.  The record confirms the ALJ's conclusion

that it was physical impairments, rather than mental, that were the focus of plaintiff's complaints

of functional limitations.  At the hearing, when asked to identify her "number one limiting

impairment," plaintiff responded: "I would say pain-wise it's my pelvis, but I'm – I mean the

neuro cardiogenic syncope the passing out, and the near passing out is a huge part of my

problem."  R. 49. [6]  Plaintiff has not appealed the ALJ's factual conclusion that treatment has

resulted in effective control of the claimant's pain and that syncope is not an ongoing issue.  R.

23-24.  The record also supports the ALJ's conclusion that plaintiff's mental health steadily

improved while treating with LCSW Clancy and APRN Douglas, as discussed in more detail in

the preceding sections.  To cite one illustration, plaintiff reported to APRN Douglas in October

2020 that depression made daily activities "extremely difficult," R. 545, and "very difficult"

from November 2020 to February 2021, R. 560, 810, 829; however, she reduced that rating to

"not difficult at all" in March and June 2021 and only "somewhat difficult" in September 2021,

R. 842, 910, 925.  Lastly, there is no diagnosis of PTSD in the treatment record.  Accordingly,

substantial evidence supports the ALJ's conclusion that PTSD, bipolar disorder and

posttraumatic stress disorder were not severe impairments for plaintiff.

---

[6] Similarly, during the hearing, plaintiff's attorney characterized her physical impairments as
plaintiff's "main problem" as compared to her mental impairments.  *See* R. 42 ("She also suffers
from some mental issues it's – she was diagnosed as bipolar, depression, anxiety, PTSD, and
agoraphobia, but her main problem is really her hip and her inability to stand.").

There does appear to be an omission in the Step 2 analysis insofar as the ALJ did not address whether anxiety or agoraphobia were medically determinable impairments, which is problematic given that anxiety was a primary focus of her psychotherapy sessions with Jessica Clancy, LCSW and was listed among her diagnoses by Gweneth Douglas, APRN, who prescribed Xanax.  *See* R. 534-67, 805-46, 899-29.  However, the Court finds this omission to be harmless error given that the ALJ expressly considered anxiety and agoraphobia in the context of the Step 2 analysis and in his RFC analysis.  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (failure to consider certain impairments at Step 2 was harmless error where they were considered in subsequent steps of evaluation). [7]  There is a line of decisions from district courts in this circuit holding that harmless error analysis at Step 2 only applies to determinations as to whether an impairment is severe or non-severe and that failure to identify a medically determinable impairment at Step 2 can never be harmless, *see*, *e.g.*, *Penny Lou S. v. Comm'r of Soc. Sec.*, No. 2:18-cv-213, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019) ("[T]he step-two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable.").  However, those decisions rely on the abstract premise that because the regulations do not provide for consideration of non-medically determinable impairments in subsequent stages of the decision and do not require the ALJ to credit a claimant's statements regarding such impairments, then it is theoretically impossible for the ALJ to do so.  *See id.*; *see also Cooper v. Comm'r of Soc. Sec.*, No. 17-cv-1058-MJR, 2019 WL 1109573, at *5 (W.D.N.Y.

---

[7] In addition to ruling that the omission at Step 2 was harmless, the Second Circuit also ruled that the argument was waived because plaintiff's counsel did not raise it before the district court. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013).  Similarly, in the present case, Plaintiff did not specifically argue that the ALJ failed to consider her anxiety and agoraphobia at Step 2, such that the Court is not obliged to address that issue.  Nonetheless, the Court has considered it in the interest of thoroughly examining the substantial evidence question.

Mar. 11, 2019).  In practice, ALJs sometimes do address conditions in the subsequent evaluation

that they did not evaluate at Step 2.  In such instances, courts – including the Second Circuit –

have found the omission at Step 2 may be harmless error.  *See*, *e.g.*, *Reices-Colon*, 523 F. App'x

at 798 (described above). [8]  In the present case, ALJ addressed anxiety and agoraphobia

throughout his decision and at least partially credited plaintiff's subjective reports relating to

anxiety. R. 18, 24-25.  Therefore, the failure to consider whether anxiety and agoraphobia were

medically determinable impairments at Step 2 was harmless error.

### 4.  The ALJ adequately explained his reasoning for assessing no non-exertional limitations in the RFC

Plaintiff's final claim is that the ALJ did not explain why the RFC did not contain a

single non-exertional limitation despite finding that plaintiff had mild limitations in each of the

four categories of the paragraph B criteria.  Pl. Br., ECF 14-1 at 13.  This claim is unfounded.

As the relevant regulation expressly states, a limitation rating of "none" or "mild" generally

results in a finding that a mental impairment is "not severe" at Step 2.  20 C.F.R. §

404.1520a(d)(1).  In the subsequent RFC analysis, the ALJ "must <u>consider</u> whether any

functional restrictions exist because of the mild limitations, and, <u>only if they do</u>, incorporate

those restrictions into the RFC." *Beliana M.C. v. Comm'r of Soc. Sec.*, No. 3:21-cv-464

(SALM), 2022 WL 596045, at *9 (D. Conn. Feb. 28, 2022) (emphasis retained); *see also* 20

---

[8] *See also*, *e.g.*, *Elizabeth Z. v. Comm'r of Soc. Sec.*, No. 1:21-cv-0121 (CJS), 2023 WL 2445336, at *6 (W.D.N.Y. Mar. 10, 2023) (expressly rejecting line of cases holding that harmless error doctrine cannot apply to omission at Step 2 and finding harmless error where ALJ "clearly considered" impairment at later stages of evaluation); *Lorraine Michele H. v. Comm'r of Soc. Sec.*, No. 5:21-cv-13 (MAD)(TWD), 2022 WL 7285345, at *4-6 (N.D.N.Y. Sept. 13, 2022) (harmless error where ALJ did not reference migraine condition at Step 2 but discussed it in RFC determination), *report and recommendation adopted*, 2022 WL 4545541 (N.D.N.Y. Sept. 29, 2022); *Delgado v. Berryhill*, No. 3:17-CV-54 (JCH), 2018 WL 1316198, at *5 (D. Conn. Mar. 14, 2018) (harmless error where ALJ did not mention anxiety at Step 2).

C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").  In other words, a finding of mental limitation in analysis of the paragraph B criteria at Step 2 does not necessarily imply a corresponding limitation in a claimant's RFC.  *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("[A]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases.").  So long as the ALJ applies the proper legal standards and relies on substantial evidence, there is no error.  *Id.*; *see also*, *e.g.*, *Beliana M.C.*, at *9 (no error where ALJ adequately explained reasoning for not including mental limitations in RFC conclusion despite finding at Step 2 that mental impairments caused mild limitations in paragraph B categories); *McMillian v. Comm'r of Soc. Sec.*, No. 1:20-cv-7626 (KHP), 2022 WL 457400, at *6-7 (S.D.N.Y. Feb. 15, 2022) (rejecting argument that finding of moderate limitations and severe mental impairments at Step 2 required finding corresponding limitations in RFC, and concluding that ALJ did not err in finding plaintiff capable of performing simple, routine tasks).  Here, as in *McMillian*, "the ALJ provided a thorough narrative discussion . . . of each of Plaintiff's limitations, and cited specific medical opinions and reports about Plaintiff's mental health records, credited nonmedical evidence (i.e. Plaintiff's testimony about her daily activities and observations about herself) and described how the evidence supported each conclusion." *McMillian*, 2022 WL 457400, at *7.  Consequently, there was no procedural error relating to non-exertional limitations.

**D.  CONCLUSION**

For the reasons set forth above, plaintiff's Motion to Reverse the Decision of the

Commissioner, ECF 14, is DENIED, and the Commissioner's Motion to Affirm, ECF 16, is

GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge

to direct the entry of a judgment of the District Court in accordance with the Federal Rules of

Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals

from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

SO ORDERED, this 12th day of December, 2023, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge